UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNDERWOOD MILES, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Nos. 3:13-CR-138-RLJ-HBG-1 |
| ) | 3:16-CV-338-RLJ |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM OPINION**

Before the Court is Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 33].[1] The Petitioner relies on *Johnson v. United States*, 135 S. Ct. 2551 (2015), in which the Supreme Court held that the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), was unconstitutionally vague [*Id.*]. The United States responded in opposition on July 5, 2016 [Doc. 35]; Petitioner replied in turn [Doc. 36]. For the reasons below, Petitioner's § 2255 motion [Doc. 33] will be **DENIED** and **DISMISSED WITH PREJUDICE**.

**I.  BACKGROUND**

In 2013, local police officers saw Petitioner, a convicted felon, shooting a firearm [Presentence Investigation Report (PSR) ¶ 4]. Petitioner later pled guilty to possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1), which subjected him to a statutory penalty range of up to ten years' imprisonment under 18 U.S.C. § 924(a)(2) [*Id.* ¶¶ 2, 59]. Based on a 1998 Tennessee conviction for attempted second-degree murder, the United States Probation

---

[1]  On February 11, 2016, Federal Defender Services of Eastern Tennessee ("FDSET") was appointed for the limited purpose of reviewing the case to determine whether or not Petitioner is eligible for collateral relief based on the *Johnson* decision. *See* E.D. Tenn. SO-16-02 (Feb. 11, 2016). Consistent with that appointment, FDSET filed the instant § 2255 motion.

Office assigned Petitioner an enhanced base offense level under Section 2K2.1 of the United States Sentencing Guidelines [*Id.* ¶¶ 22, 32].[2] After a four-level enhancement for possessing the firearm in connection with another felony offense and a three-level reduction for acceptance of responsibility, Petitioner received a total offense level of twenty-one [*Id.* ¶¶ 13, 19–21]. Given his criminal history category of II, the United States Probation Office assigned Petitioner an advisory Guidelines range was 41 to 51 months' imprisonment [*Id.* ¶¶ 36, 60]. The Court sentenced Petitioner to 44 months' imprisonment on April 29, 2014 [Doc. 29]. No direct appeal was taken and his conviction became final for purposes of § 2255(f)(1) on May 13, 2014. *See Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004) (an unappealed judgment of conviction becomes final when the fourteen-day period for filing a direct appeal has elapsed).

The United States Supreme Court issued the *Johnson* decision on June 26, 2015. Petitioner filed the instant petition less than one year later [Doc. 33 (challenging base offense level)].

## II. TIMELINESS OF PETITIONER'S CLAIMS

Section 2255(f) places a one-year statute of limitations on all petitions for collateral relief under § 2255 running from either: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the

---

[2] The Guidelines set a general base offense level of fourteen for violating 18 U.S.C. § 922(g). U.S. Sentencing Manual § 2K2.1(a)(6). For offenders with one prior conviction for either a "crime of violence" or "controlled substance offense," the base offense level increases to twenty. U.S. Sentencing Manual § 2K2.1(a)(4).

2

facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f). Supreme Court precedent makes clear that *Johnson*'s invalidation of the ACCA residual clause amounted to a new rule made retroactively applicable on collateral review. *See Welch v. United States*, 136 S. Ct. 1257, 1265 (U.S. 2016) ("*Johnson* is . . . a substantive decision and so has retroactive effect . . . in cases on collateral review."); *In re Windy Watkins*, 810 F.3d 375, 380–81 (6th Cir. 2015) (finding *Johnson* constitutes a new substantive rule of constitutional law made retroactively applicable on collateral review and thus triggers § 2255(h)(2)'s requirement for certification of a second or successive petition). It is yet to be seen whether the same is true of the "new rule" that results from application of *Johnson*'s reasoning in the Guideline context. *See Pawlak v. United States*, 822 F.3d 902, 911 (6th Cir. 2016) (holding that *Johnson*'s vagueness analysis applies equally to the Guidelines and, as a result, that the parallel residual provision contained in Section 4B1.2 was void for vagueness); *but see In re Embry*, No. 16-5447, 2016 WL 4056056, at *1 (6th Cir. July 29, 2016) (recognizing that "it is not clear whether to treat *Pawlak* as a new rule that the Supreme Court has not yet made retroactive [to cases on collateral review] or as a rule dictated by *Johnson* that the Supreme Court has made retroactive"). The issue need not be resolved here, however, because the *Johnson* decision has no impact on Petitioner's case.

### III. STANDARD OF REVIEW

The relief authorized by 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v.*

*United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

Petitioner bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings, *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993), and he likewise bears the burden of articulating sufficient facts to state a viable claim for relief under 28 U.S.C. § 2255. A § 2255 motion may be dismissed if it only makes vague conclusory statements without substantiating allegations of specific facts and thereby fails to state a claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972).

## IV. ANALYSIS

Petitioner articulates a single ground for relief, arguing that the *Johnson* decision removed second-degree murder from Section 4B1.2's definition of "crime of violence" and, without that offense, he lacks the predicate offense required for application of an enhanced base offense level.

The ACCA mandates a fifteen-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The statute defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual

4

clause"). 18 U.S.C. § 924(e)(2)(B). It was this third clause—the residual clause—that the Supreme Court deemed unconstitutional in *Johnson*. 135 S. Ct. at 2563. The Court went on to make clear, however, that its decision did "not call into question . . . the remainder of the [ACCA's] definition of violent felony," i.e., the use-of-physical-force and enumerated-offense clauses. *Id.* Nor did *Johnson* disturb the use of prior serious drug offenses.

Section 2K2.1 sets a general base offense level of fourteen for violating 18 U.S.C. § 922(g). U.S. Sentencing Manual § 2K2.1(a)(6). For offenders with one prior conviction for either a "crime of violence" or "controlled substance offense," the base offense level increases to twenty. U.S. Sentencing Manual § 2K2.1(a)(4). "Controlled substance offense" is defined as any offense "punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S. Sentencing Manual § 4B1.2(b). "Crime of violence" is defined in an almost identical manner as "violent felony" under the ACCA. *See* U.S. Sentencing Manual §4B1.2(a) (adopting identical use-of-force and residual clauses as well as a nearly identical enumerated-offense clause).

The validity of Petitioner's sentence thus depends on whether at least one of his prior convictions qualifies as a "crime[] of violence" under one of the unaffected provisions of Section 4B1.2(a) or as a "controlled substance offense[]" under Section 4B1.2(b). *See e.g.*, *United States v. Ozier*, 796 F.3d 597, 604 (6th Cir. 2015) (denying petition where conviction qualified as a predicate offense independent of the residual clause), *overruled on other grounds by Mathis v. United States*, 136 S. Ct. 2243, 2251 n. 1 (2016). To determine whether a particular offense qualifies as a crime of violence under any of the prongs of the above definition, courts must first identify the precise crime of conviction. *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013).

5

They do so by employing a "categorical approach," under which they look "only to the statutory definitions—elements—of a defendant's prior offense, and not to the particular facts underlying [each individual] conviction[]." *Id.* at 2283. When the conviction involves violation of a "divisible" statute—one which comprises multiple, alternative versions of the crime—courts resort to the "modified categorical approach" under which they "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Id.* at 2281.

Review of Petitioner's PSR reveals that he has at least one prior conviction for a crime of violence under provisions unaffected by the *Johnson* decision and, as a result, the Court finds that Petitioner has failed to establish an entitlement to collateral relief.

At the time Petitioner committed the offense, Tennessee defined second-degree murder as the "[(a)(1)] knowing killing of another [or (a)(2)] killing of another which results from the unlawful distribution of any Schedule I or Schedule II drug when such drug is the proximate cause of the death of the user." Tenn. Code Ann. § 39-13-210(a)(1) (1998); *State v. Gilliam*, 901 S.W.2d 385, 390 (Tenn. Crim. App. 1995). The statute is divisible because it lists multiple variants of the same offense. *Accord United States v. Cooper*, 739 F.3d 873, 879 (6th Cir. 2014) (holding that a provision is divisible when it "can be offended in a number of [unrelated] ways"). Because the undisputed record demonstrates with sufficient clarity that Petitioner was convicted of intentionally attempting to kill another under subsection (a)(1) [Doc. 21 ¶ 32 ("On January 21, 1998, [Petitioner] shot [at the victim] three times . . . with a 9mm semi-automatic handgun."); Doc. 33-1 (reflecting charge for attempted first-degree murder, but conviction for the lesser-included

offense of attempted second-degree murder)],³ this Court will limit its analysis to determining whether violation of that specific subdivision remains a crime of violence.

Violations of Tennessee Code Annotated § 39-13-210(a)(1) categorically qualify as crimes of violence under the Guidelines use-of-physical-force clause because the knowing killing of another human necessarily requires the use of force capable of causing physical injury. *Cf. United States v. Anderson*, 695 F.3d 390, 400 (6th Cir. 2012) ("We hold that one can knowingly cause serious physical harm to another only by knowingly using force capable of causing physical pain or injury, i.e., violent physical force."); *United States v. Evans*, 699 F.3d 858, 863 (6th Cir. 2012) ("One can knowingly cause or attempt to cause physical harm . . . to another only by knowingly using or attempting to use . . . force capable of causing physical injury."); *see also United States v. Bennett*, 604 F. App'x 11, 16 (2nd Cir. 2015) (concluding, because all forms of New York second-degree murder require the defendant to cause the death of another, the offense categorically qualifies as a violent felony under the use-of-physical-force clause).

To the extent that Petitioner's argues it is possible to commit second-degree murder without the use of force by adopting poison or setting a trap, this Court disagrees. The Sixth Circuit foreclosed any argument that killing by way of poison, a trap, or other similar means falls outside the scope of the use-of-physical-force clause when it held that: (1) an individual "uses" force when, regardless of the means adopted, he knowingly sets in motion a series of events that he knows will result in the application of physical force to another, *Evans*, 699 F.3d at 864 (rejecting a similar

---

³ Petitioner does not contest the accuracy of the information contained in his PSR, but only the propriety of the Court's decision to use the predicate offenses listed therein as grounds for base offense level enhancement. Further, Petitioner has not met his burden on collateral review by supplementing the record with evidence that he was convicted of a non-generic variant of second-degree murder or identifying any other reason to doubt the accuracy of the representations contained in his PSR.

argument by noting that it is "based on the flawed premise that in order for a person to use strong physical force, the person must generate or direct the use of this force."); and (2) crimes that require physical injury necessarily involve an application of "physical force," *Anderson* 695 F.3d at 400; *see also Hill v. Werlinger*, 695 F.3d 644, 647 (7th Cir. 2012) (finding that Illinois battery was a violent felony under the ACCA because the statute required proof that the defendant "knowingly or intentionally . . . cause[d] bodily harm," even though it did not include physical force as a stand-alone element). Thus, despite suggestions to the contrary, the intentional use of poison and knowing use of a trap are uses of physical force because both actions involve setting into motion a serious of events capable of causing physical injury. *See Vargas-Sarimento v. United States*, 448 F.3d 159, 174–75 (2nd Cir. 2006) (finding that murder by poison involved the use of physical force because "perpetrator [who] poisons food that she intends her spouse to eat . . . intentionally avails herself of the physical force exerted by poison on a human body to kill her husband").

Petitioner appears to argue that this Court should abandon the *Anderson* decision's definition of "physical force" in light of the intervening *Johnson* decision. While it is true that district courts have an obligation to follow the Supreme Court where an intervening decision of that Court directly reverses an opinion of the Court of Appeals or implicitly reverses the same through a case with indistinguishable facts, *In re Higgins*, 159 B.R. 212, 215 (S.D. Ohio Aug. 13, 1993), such is not the case here. In cases like the instant one—where the intervening decision neither expressly nor implicitly overrules the prior Court of Appeals decision, a district court must "be extremely careful in concluding that circuit precedent is no longer good law," *Id.* at 216 (quoting *Rodriguez v. Bowen*, 678 F. Supp. 1456, 1462 (E.D. Cal. 1988), and should only deviate from such authority where it is "powerfully convinced that the circuit will overrule itself at the next available opportunity," *Beard v. Whitley Cnty. REMC*, 656 F. Supp. 1461, 1471 (N.D. Ind.

8

1987), aff'd, 840 F.2d 405 (7th Cir. 1988). "*[S]ub silentio* overruling of a Court of Appeals decision by a Supreme Court case resting on different facts is a rare occurrence," and thus deviation from otherwise-binding precedent requires strong, objective evidence that the "higher court would repudiate [its holding] if given a chance to do so." *In re Higgins*, 159 B.R. at 216 (quoting *Norris v. United States*, 687 F.2d 899, 904 (7th Cir. 1982)). The fact that the Sixth Circuit has cited the *Anderson* decision multiple times since the *Johnson* decision was released, s*ee, e.g.*, *United States v. Jackson*, 655 F. App'x 290, 292 (6th Cir. 2016) (explaining that "a defendant's deceit or fraud or the will of a victim which causes serious bodily injury is 'equivalent' to the use of force"); *Jones v. United States*, No. 1:12-cr-533, 2016 WL 6432814, at *4 (6th Cir. Oct. 31 2016) (finding statute requiring "serious physical harm" necessarily involved the use of force capable of causing physical injury), makes it unlikely that they will treat the latter as implicitly overruling the former. Absent compelling proof to the contrary, this Court remains bound by the *Anderson* and *Evans* decisions.

## IV. CONCLUSION

For the reasons discussed above, Petitioner's § 2255 motion [Doc. 33] will be **DENIED** and **DISMISSED WITH PREJUDICE**.  The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous.  Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal.  *See* Rule 24 of the Federal Rules of Appellate Procedure.  Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**.  28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge